Pvt. E2 Donald Jack ANDERSON,
NG26382581, Plaintiff-Appellant,

v.

Melvin LAIRD et al., Defendants-
Appellees.

No. 18591.

United States Court of Appeals,
Seventh Circuit.

Jan. 14, 1971.

George C. Pontikes, Chicago, Ill., for
plaintiff-appellant.

William J. Bauer, U. S. Atty., Chica-
go, Ill., for defendants-appellees; John
Peter Lulinski, Jeffrey Cole, Matthias A.
Lydon, Asst. U. S. Attys., of counsel.

Before HASTINGS, Senior Circuit
Judge, PELL, Circuit Judge and REY-
NOLDS, District Judge.[1]

PELL, Circuit Judge.

This is one of an apparently growing
class of cases involving the claim of in-
terference with constitutional rights,
usually multiple, arising out of authori-
tative discouragement or outright prohi-
bition of the manner and style in which
one would adorn himself whether by rai-
ment or natural exfoliation.

In the present case the plaintiff, Don-
ald Jack Anderson, is appealing from an
order of the United States District
Court for the Northern District of Illi-
nois which denied his motion for a pre-

---

[1]. Judge John W. Reynolds is sitting by
designation from the United States Dis-
trict Court for the Eastern District of
Wisconsin.

liminary injunction which would have enjoined Anderson's induction into the United States Army pending the determination of the issues raised in his complaint.

Prior to the events giving rise to his complaint, Anderson was a member of the Illinois Army National Guard. As such, he was a member of the Ready Reserve of the United States Army. 10 U. S.C. § 269(b).[2] The issues presented by his complaint deal generally with his right to wear his hair "in a style currently fashionable"[3] without interference or adverse action against him by his superiors in the Guard.

Section 673a(a) (1) of Title 10, United States Code, authorizes the President to order to active duty any member of the Ready Reserve who is "not * * * participating satisfactorily" in his reserve duties.[4] Such authority has been delegated by the President to the defendant Secretary of Defense and by him to the defendant Secretary of the Army. Exec. Order No. 11366, 3 C.F.R. 312 (Supp.1967), 10 U.S.C. § 673a.

"Satisfactory participation" is defined in Army Regulation 135–91, dealing specifically with reserve components, and Army Regulation 600–20, dealing with all components. Paragraph 5(d) (2) of AR 135–91 defines satisfactory participation to include "attendance at all scheduled unit training assemblies * * * unless excused." No credit for attendance is given a member physically present "unless he is in the prescribed

uniform, presents a neat and soldierly appearance, and performs his assigned duties in a satisfactory manner as determined by the unit commander." "Neat and soldierly appearance" is further defined by AR 600–20 ¶ 31(a), as it read when plaintiff was charged with unsatisfactory participation:

"The hair to include sideburns will be well groomed, cut short or medium length and neatly trimmed at all times."

Anderson's complaint alleges that for four years prior to February, 1970, he had attended all meetings, obeyed all rules and assumed all obligations of his position as a member of the Illinois Army National Guard. On three separate occasions during February and March 1970, he attended training assemblies while wearing his hair "in a style currently fashionable." His unit commander informed him, apparently on each occasion, that his hairstyle violated the regulation. He was declared an unsatisfactory participant. Such declaration caused him to have more than five unsatisfactory attendances in one year[5] and thus made him liable to be ordered to active duty in the Regular Army pursuant to 10 U.S.C. § 673a, *supra*.

On March 30, 1970, plaintiff was informed by the defendant Adjutant General of the Illinois Army National Guard that he would be ordered to active duty and that he could file an appeal. Plaintiff did appeal, claiming that others in his unit had hairstyles similar to his but

---

2. Section 269(b), Title 10 U.S.C. provides:
   "(b) The units and members of the Army National Guard of the United States and of the Air National Guard of the United States are in the Ready Reserve of the Army and the Ready Reserve of the Air Force, respectively."

3. The complaint is no more explicit than the reference to "a style currently fashionable" and there was no evidentiary hearing on the motion for preliminary injunction but merely an argument on the law. We feel, however, we may safely assume the currently fashionable reference was to a luxuriant growth of hair.

4. "§ 673a. *Ready Reserve*: members not assigned to, or participating satisfactorily in, units
   (a) Notwithstanding any other provision of law, the President may order to active duty any member of the Ready Reserve of an armed force who—
   (1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve * * *."

5. The actual count of unsatisfactory attendances was apparently six. We have no explanation of the nature of the three unsatisfactory attendances other than those attributable to the haircut but we assume they had no relation to that particular factor.

were not reprimanded in any way. His appeal was denied on July 1, 1970, and Anderson was ordered to active duty commencing July 11, 1970.

This action was filed on July 10, 1970. It seeks orders in the nature of mandamus directing the defendant officers of the Illinois Army National Guard to reinstate plaintiff in the Guard and enjoining the other defendants from ordering Anderson to active duty in the Regular Army.

The district court denied the request for a preliminary injunction on July 10. It is from this denial alone that Anderson now appeals.

The scope of our review of the denial of a temporary injunction is limited. "[I]t is well established that the issuance of a temporary injunction rests in the sound discretion of the trial court. On appeal, an order granting or denying such an injunction will not be disturbed unless there is a clear showing of an abuse of the discretion so exercised." Progress Development Corp. v. Mitchell, 286 F.2d 222, 229 (7th Cir.1961). Discretion is abused only where no reasonable man would take the view adopted by the trial court. Particle Data Laboratories, Inc. v. Coulter Electronics, Inc., 420 F.2d 1174, 1178 (7th Cir.1969).

Among the several factors to be weighed by a district court in granting or denying a preliminary injunction is the probability that plaintiff will ultimately prevail on the merits. Tele-Controls, Inc. v. Ford Industries, Inc., 388 F.2d 48, 50 (7th Cir.1967).

■ On the basis of applicable law and the facts as they appear before us, we are not persuaded that there is any reasonable probability of plaintiff's ultimate success in his litigation.

■ Anderson challenges the action taken against him by the Army and the National Guard on three grounds. He first asserts that he has a right under the First and Ninth Amendments to wear his hair as he wishes and that such right may not be infringed by the government absent "substantial justifica-

tion." *See* Breen v. Kahl, 419 F.2d 1034, 1036 (7th Cir.1969). If Anderson were completely in civilian status, his position would have legally persuasive stature.

However, "the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty." Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953). It cannot be seriously disputed that certain constitutional rights are and must be suspended or curtailed in the name of military discipline. Raderman v. Kaine, 411 F.2d 1102, 1104 (2d Cir.1969), cert. den. 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447.

■ And, in matters properly within the area of military discretion, it is not for civil courts to judge whether the military has properly determined the balance between military needs and personal rights. *See Burns, supra*, 346 U.S. at 140, 73 S.Ct. 1045.

In Orloff v. Willoughby, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953), the Court dealt with military duty assignments and said:

"We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."

Anderson does not raise on this appeal, and, as far as we can tell, did not raise at the hearing below, the possible question of whether any different treat-

ment should be accorded the reservist or Guard soldier inasmuch as a substantial portion of his time is spent in civilian pursuits rather than military. While we perhaps therefore are not compelled to consider this matter, it is our opinion that no different treatment should be accorded the part-time soldier. He has undertaken a type of military duty on a voluntary basis and cannot be heard to complain if the legitimate requirements of necessity do curtail to some extent the manner of his appearance in civilian life.

The Army apparently remains singularly unimpressed by the strength Samson found in flowing locks. While presumably still concerned with physical capabilities on the part of soldiers, the Army also has expressed regulatory interest in the appearance of its personnel. While a neat and tidy appearance by standards somewhat more conservative than those adopted by the Beatles may avail little in jungle guerrilla warfare, we are not prepared to say that the Army's concern for appearance generally is not one of legitimacy and subject to Army determination.

Thus we can find no justification warranting our interference with the discretionary decision of the military to impose certain standards of appearance to govern its members. We note that other courts have recently reached a like conclusion in cases substantially similar to the instant one. Gianatasio v. Whyte, 426 F.2d 908 (2d Cir.1970), cert. den. 400 U.S. 941, 91 S.Ct. 234, 27 L.Ed.2d 244 (1970), Byrne v. Resor, 412 F.2d 774, 775 (3d Cir.1969), Raderman v. Kaine, *supra,* 411 F.2d at 1105, and Smith v. Resor, 406 F.2d 141, 145 (2d Cir.1969) and cases cited therein.

■ In addition to his First and Ninth Amendments argument, Anderson asserts that AR 135–91 and AR 600–20 are so vague and uncertain as to amount to a denial of due process of law. He finds particularly offensive the use of the standard "neat and soldierly" and the delegation of the ultimate definition of the standard to individual unit commanders. Anderson asserts that such a standard lacks sufficient precision to inform those subject to it of what conduct on their part will violate it.

By this standard the military has sought to grant unit commanders discretion in dealing with the appearance of the men under their command. This, as we have already indicated, is the sort of discretion that is beyond the review of civil courts.

Furthermore, the record discloses that the unit commander exercised this discretion and set the definition of "neat and soldierly" by personally informing plaintiff that his appearance did not conform to the standard. Anderson cannot now assert that he was unaware of the particular conduct that rendered him subject to discipline. He nevertheless persisted in such conduct until he had accumulated enough unsatisfactory marks to make him liable for activation into the Regular Army.

Finally, Anderson asserts that his right to equal protection implicit in the Fifth Amendment, Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), has been violated. He asserts that other men in his unit had a hairstyle similar to his and were not reprimanded in any way. We need not reach the question of whether this would constitute a legally sufficient ground for relief. It appears from the record that Anderson has prosecuted a military appeal on this same ground and failed. From this, the district court could properly conclude that there is no more than a slight probability of plaintiff's being able to prove facts to sustain the unsupported allegation of his complaint.

We find the probability of plaintiff's ultimate success on the merits so minimal we are unable to say that the district court has clearly abused its discretion in denying a preliminary injunction pending trial. We therefore affirm.

Affirmed.

REYNOLDS, District Judge (concurring in part, dissenting in part).

I concur in the result because this case involves the appeal from a denial of temporary injunction. There is a virtually unanimous body of judicial opinions refusing to intervene in the punitive activation of "civilian-soldiers" for having long hair. See cases at page 915 herein. Hence, although the equities appear to be heavily in appellant's favor and it is a convincing case of immediate, irreparable harm, nonetheless, in light of the case law, the trial judge was justified in concluding that the appellant's chances of ultimate success on the merits were slim indeed.

In spite of the fact that the majority opinion, holding, in effect, that a civilian-soldier may be ordered into active duty because he has long hair, is backed by considerable legal authority, I must, nevertheless most respectfully take exception with that portion of the opinion which deals with appellant's First and Ninth Amendment rights.

The right to wear one's hair in any style one desires is "an ingredient of personal freedom protected by the United States Constitution," Breen v. Kahl, 419 F.2d 1034, 1036 (7th Cir.1969), and "[t]o limit or curtail this or any other fundamental right, the state has a 'substantial burden of justification.'" Breen v. Kahl, *supra*, at 1036. The state should be held to this burden of justification even where the military is involved. In a recent selective service case, the Supreme Court stated:

"* * * a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; *and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. * * *"* United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L. Ed.2d 672 (1968). (Emphasis supplied.)

Under the Ninth Amendment, the Government including the military, has no right to unnecessarily interfere with the private lives of citizens whether they be in the military or not.

The majority opinion herein implies that the appellant's assertion of his constitutional rights and his right to enjoy them absent substantial justification would be persuasive only if he were "completely in civilian status." One does not lose the right to constitutionally-protected freedoms absent substantial justification even in the military. A soldier may lose certain liberties, otherwise constitutionally protected, when serving in the military. Raderman v. Kaine, 411 F.2d 1102 (2d Cir.1969), cert. denied 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447. The loss of these rights while in military service is presumably attended in each instance by "substantial justifications" inherent in the nature of military duty.

After noting that appellant apparently failed to raise, either below or on this appeal, the issue of whether differing treatment should be accorded a reservist, as opposed to an active duty soldier, the majority opinion states categorically that "no differing treatment should be accorded the part-time soldier" because the appellant has undertaken this form of military duty "voluntarily" and "cannot be heard to complain if the legitimate requirements of necessity do curtail to some extent the manner of his appearance in civilian life." I must respectfully disagree. The majority assumes the legitimacy and necessity of the requirements at issue merely because the appellant has "voluntarily" associated himself with the military. Whether it is correct to typify the appellant's joining the national guard as "voluntary" aside, the majority appears to me to absolve the military of any burden of justification with regard to the abrogation of appellant's constitutional rights. The military has such a burden.

Furthermore, the civilian-soldier status should be taken into account because the constitutional rights that circumstances may require an active duty soldier to give up to complete his mission efficiently and successfully may not be necessary for a civilian soldier to give up to complete his mission efficiently and successfully. I can think of many real examples but will cite just one. In Wisconsin, we have members of the national guard who are leaders in both of our political parties and take a very active role in politics. If they were on active duty, this would not be permitted by the military. I think it could be argued that while on active duty, they forego their constitutional rights in that area. But no one would seriously argue that as civilian-soldiers in the national guard they have to give up such rights.

A civilian-soldier is neither a civilian nor a soldier. He stands somewhere in between. Accordingly, it is not axiomatic that because a soldier on active duty surrenders certain liberties, a civilian-soldier in the national guard also surrenders the same liberties to the same degree merely because both are somehow connected with the military. I am concerned that the majority opinion appears to hold that because the appellant is not "completely civilian" he is, therefore, to be treated as though he were completely military and that nothing more need be shown to justify an interference with his private life by a reserve commander.

The military has not met its burden to justify its interference with the private life of this particular type of "soldier." I do not say that they could not ever meet the burden. However, I am presently unconvinced that short hair in the national guard is sufficiently important to the orderly administration of our armed forces to warrant the punitive activation of a guardsman who asserts the right to determine the length of his own hair.