John Earl BAUGH, Petitioner,

v.

Major General George B. BENNETT, Adjutant General for the State of Idaho, and Lieutenant General S. R. Larsen, Commanding General, Sixth United States Army, Respondents.

Civ. No. 1–71–2.

United States District Court,
D. Idaho.

Oct. 5, 1972.

**1249**

Sidney E. Smith, U. S. Atty., and John L. King, Asst. U. S. Atty., for Lt. Gen. S. R. Larsen.

Don J. McClenahan, of McClenahan & Greenfield, Boise, Idaho, for Major Gen. George B. Bennett.

### MEMORANDUM DECISION AND ORDER

ANDERSON, District Judge.

Petitioner has filed a Renewed Petition for Writ of Habeas Corpus. Petitioner's first petition was held to be a petition for writ of mandate to compel the respondents to perform a duty owing him, namely, a meaningful appeal from the order transferring him to the Sixth U. S. Army for active duty. No appeal was taken from this Court's order and decision of January 10, 1971, D.C., 329 F.Supp. 20. It is, therefore, the binding law of this case. Pursuant to that order, the petitioner took a new appeal and it is apparent that petitioner has been afforded a meaningful appeal although the decision was adverse to him.

The petitioner in his Renewed Petition for Habeas Corpus is once again seeking a court-ordered discharge from the military. The case is presently before this Court on the respondents' motion for summary judgment. Both parties are in agreement as to the essential facts as set out in Respondents' Memorandum in Support of Motion for Summary Judgment with the exception that petitioner claims that he requested a rehearing before the Military Appeals Board on June 6, 1972. The request was denied by telegram dated June 13, 1972. At that point petitioner sought and secured temporary relief from this court.

The first question that this court must consider is whether this court has jurisdiction. The recent Supreme Court decision of Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972) is authority for taking jurisdiction in this

Michael Donnelly, Boise, Idaho, for plaintiff Baugh.

matter pursuant to 28 U.S.C. § 2241(c) (1). The cases are similar in that jurisdiction is decided on a basis of the center of gravity, vis-a-vis, Idaho is where the petitioner has his major contacts with the respondents, even though technically the respondent, General Larsen, is amenable to process only in California.

Petitioner was and is a long-time resident of Idaho. All of his National Guard duty was in Idaho. He was a resident of Idaho when he filed his first petition, when he took his new court-ordered appeal, when he filed his Renewed Petition (though temporarily absent seeking employment), and, so the Court is informed without contradiction, remains an Idaho resident as of this time. Because of the appeals and the filing of the petitions, the order to active duty never went into effect. Petitioner's only contacts with the military have been in Idaho and this is sufficient under Arlen v. Laird, 451 F.2d 684 (CA2d, 1971), and Strait v. Laird, supra, to give General Larsen, Sixth Army Commander, "presence" in Idaho so as to sustain jurisdiction. The fiction of "custody" in California (Sixth Army Headquarters) should not be indulged to defeat petitioner's application to this court under the circumstances of this case. Miller v. Chafee, 462 F.2d 335, 337 (CA 9th 1972).

█ As to the merits of this case, the court cannot find substance in petitioner's claims. As was stated earlier, petitioner was granted an appeal in which to raise these issues within the military system. There is no showing that the appeal petitioner initiated as a result of this court's Writ of Mandate was anything but fair or that the Appeal Board's findings were in error. The findings and conclusions of the several Army review boards are entitled to a presumption of correctness.

█ Petitioner's first claim that failure of the Idaho National Guard to give him notice that he could not wear his wig is clearly irrelevant since the Appeal Board stated the wig controversy was not relevant to the determination of the outcome of the case. The Appeal Board called the petitioner to active duty, not because he wore a wig, but because he did not attend drills for the months of August and September, 1970. As the Board observed:

> "Baugh was well aware of the penalty for failure to attend drill. He had been adequately oriented on this matter. Further, after absence from the fourth drill and before absence from the fifth, he was duly notified of his status. He could not have been acting in good faith by continuing to absent himself from drill." (Ex. A, p. 5)

Petitioner's second claim is that the order to involuntary active duty is invalid and unlawful in that the petitioner has, as of February 1, 1971, completed his six-year enlistment contract with the National Guard and since he has remained subject to military custody and control for a period far in excess of the contract term, he is entitled to discharge from the military service. The provisions of 10 U.S.C. § 673(a) and (b) give the President authority to call to active duty a member of the National Guard who is not satisfactorily participating in drills, Fox v. Brown, 402 F.2d 837 (2nd Cir. 1968), cert. denied, 394 U.S. 938, 89 S. Ct. 1219, 22 L.Ed.2d 471, and that member may be extended as to the time he must serve, Karpinski v. Resor, 419 F.2d 531 (3rd Cir. 1969).

The court finds no merit in petitioner's contention that a distinction should be drawn between the situation at hand and the case of the reserve member who is serving on active duty at the time he is extended. If that were the case, then petitioner could successfully evade his military duty by merely filing successive petitions for writs of habeas corpus and obtaining temporary restraining orders which would keep him off active duty until after February 1, 1971.

As to the petitioner's third contention that the reason for petitioner's involuntary activation stems from his wearing of a wig, this may be so in an historical sense. Petitioner's entire conflict may well stem from his wearing of a wig, but it is of little legal import since the legal cause for his involuntary activation is failure to participate in drills. The legal pros and cons of petitioner's right to wear a wig are discussed at length in the briefs of both parties. This court is of the opinion that the petitioner has fatally compromised any claim he might have in this regard by his failure to attend drill. This court is equally convinced that even if petitioner had not fatally compromised his claim, it would be without merit. It is well established that the Army has authority to regulate its internal activities and that these exercises of discretion are not subject to judicial review. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842, Arnheiter v. Chafee, 435 F.2d 691 (9th Cir. 1970). This authority applies to both reserve and active Army members. Raderman v. Kaine, 411 F.2d 1102 (2nd Cir. 1970), Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971).

Regulation of hair length and wigs is within the proper discretion of the Army. Anderson v. Laird, supra. When cast in the military context and the necessity for discipline, the regulation is not unreasonable or constitutionally suspect. Anderson v. Laird, supra.

Petitioner's knowing and voluntary enlistment in the Idaho National Guard as a means of discharging his military obligation, albeit on a part-time basis, subjected him to numerous rules, regulations and orders affecting his civilian life. He knew this, he accepted it. It was completely within petitioner's power to comply with drill attendance and training requirements. He knowingly ran the risk of non-compliance.