

Paul I. Feinberg, Boston, Mass., with whom Matthew H. Feinberg, Boston, Mass., was on brief, for appellants.

Robert B. Collings, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellees.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

COFFIN, Chief Judge.

Three members of the Massachusetts Army National Guard (Guard) seek injunctive and declaratory relief against the Secretary of the Army and ranking officers of the Guard, challenging an Army regulation, enforced by the Guard, proscribing the on-duty use of wigs by reserve male personnel who are neither bald nor disfigured. Plaintiffs, who wore their hair long in their civilian pursuits, sought to conform to Guard appearance requirements by wearing short-hair wigs to their periodic drills. Guard authorities, acting under the wig regulation, have threatened expulsion from or unsatisfactory ratings for meetings attended with their wigs. Five expulsions or unsatisfactory ratings, recorded as unexcused absences, in a twelve-month period will result in plaintiffs being ordered to active duty.

This appeal is from the district court's granting of defendants' motion for summary judgment. The court held that it had jurisdiction under 28 U.S.C. § 1331, finding that plaintiff Friedman,

**Bruce FRIEDMAN et al., Plaintiffs-Appellants,**

v.

**Robert F. FROEHLKE, Secretary of the Army, et al., Defendants-Appellees.**

**No. 72-1203.**

United States Court of Appeals, First Circuit.

Argued Nov. 9, 1972.

Decided Dec. 22, 1972.

---

if ordered to active duty for 18–20 months, would suffer financial loss in excess of $10,000.[1] It then took cognizance of our opinion in Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970), recognizing the right to wear one's hair as he wishes as a constitutionally protected freedom. The court, however, did not deem it such an important right as to require a compelling interest to justify its infringement. At the same time, while recognizing the Army's and the Guard's interest in discipline and uniformity, it did "not perceive a grave threat to those interests posed by the wearing of wigs which, by their craftsmanship, are neither identifiable as such nor likely to be dislodged." Left in balance, the court looked on the strictures of Orloff v. Willoughby, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953), against court interference "with legitimate Army matters" as creating "a presumption in favor of military regulations where lesser constitutional rights are involved." It therefore granted summary judgment for defendants.

We look first to the statutory and regulatory scheme. The specific sanction of an order to active duty is set forth in 10 U.S.C. § 673a(a), and can be invoked with respect to "any member of the Ready Reserve of an armed force who . . . (1) is not . . . participating satisfactorily in, a unit of the Ready Reserve." Army Regulation 135–91(5)(d)(2) defines the relevant criterion of "participating satisfactorily" as "present[ing] a neat and soldierly appearance". Finally AR 600–20, a compendium dealing with policy and procedure relating to Army command, contains a section entitled "Appearance" (para. 5–39). This sets forth the objective of maintaining "a neat and soldierly appearance at all times"; a recognition of the multiplicity of hair styles acceptable in the Army; and a statement that "So long as a soldier's hair is kept in a neat manner, the acceptability of the style will be judged solely by the criteria described below". Then follow specific criteria as to hair length and style, the length and shape of sideburns, the trimming of mustaches, and subparagraph c(4):

> "The wear of a wig or hair piece by male personnel while in uniform or on duty is prohibited except to cover natural baldness or physical disfiguration caused by accident or medical procedure. When worn it will conform to the standard haircut criteria as stated."

While the wig regulation appears in the section entitled "Appearance", it is not a regulation concerning appearance, but one proscribing a method of achieving the required appearance. The issue in the case, therefore, is not whether the Army or the Guard may adopt requirements affecting hair length and style.[2] Plaintiffs must and do concede authority for appearance standards. Nor is the issue whether the Army may specify the manner in which a prescribed appearance is achieved for its full-time personnel. The narrow issue is whether the Guard may require reservists, whose time spent in military duty is but a very small fraction of the time spent in civilian pursuits, to conform to Army haircut requirements. This is the threshold question, assumed in Orloff v. Willoughby, *supra*: is such a requirement, under the circumstances of this case, a "legiti-

---

1. While plaintiffs also assert jurisdiction under 28 U.S.C. § 1331, even in the absence of proof of the jurisdictional amount, under 5 U.S.C. §§ 701–704, and under 28 U.S.C. § 1343(3), we see no error in the district court's finding, Berk v. Laird, 429 F.2d 302, 306 (2d Cir. 1970), and no necessity to consider other sources of jurisdiction. Defendants, in contesting jurisdiction on the ground that, under Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), Army regulations of internal activities are not subject to ju-

dicial review, confuse the issue of jurisdiction with the scope of review.

2. That this proposition seems well established is indicated by the cases cited to us by defendants: Agrati v. Laird, 440 F.2d 683 (9th Cir. 1971); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969); Raderman v. Kaine, 411 F.2d 1102 (2d Cir. 1969); Gianatasio v. Whyte, 426 F.2d 908 (2d Cir. 1970); Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971).

mate Army matter"? If *Orloff's* staking out of an exclusive military jurisdiction to determine "legitimate Army matters" is to have any other meaning than that the Army may determine any matter which it sees fit to determine, there must exist a minimal burden to bring the determination within the boundaries of legitimacy.

In this case, the court having found that short-hair wigs cannot be detected and that they are not easily dislodged, three arguments supporting legitimacy have been advanced. The first is the "one Army" concept, under which those in the Army, the National Guard and the Army Reserves are subject to the same policies. The reason asserted for application of that concept here is to insure that prompt activation of reserve units shall not be frustrated. This in itself is mere assertion, there being no argument or showing that a shortage of barbers and scissors would slow the pace of any foreseeable activation. A second argument is based on an affidavit of the officer in charge of developing the Army's haircut policy that wearing wigs would disrupt training involving the wearing of gas masks. But not only is there a finding in this case of the relative fixedness of well-made short-hair wigs, but the regulations themselves permit bald and disfigured personnel to wear them, suggesting that any difficulties are at best minor. Finally, the above noted affidavit observed that a policy allowing the wearing of wigs was rejected in part because "they would be worn simply as a means for avoiding the requirements of the regulation rather than for a beneficial purpose." What this seems to come down to is a regulation whose sole justification is that it insures that another regulation can be obeyed in only one way. Even if the district court were on sound ground in looking at the no-wig regulation as being aided by a presumption of legitimacy, we view the facts and the offered justifications in this case as rendering it a very weak one.

The interest of plaintiffs, as both the district court and defendants have recognized, is in this circuit treated as a freedom protected against unjustified encroachment. Richards v. Thurston, *supra*. It may not be so important a right as to prevent the Army from regulating hair length and style of its full-time personnel. But, insofar as members of the reserve are concerned, who, under their contracts, are allowed to work and live in civilian society for most of the time, the right to wear their hair as they please is not so trivial as to be denied without any service-connected reason. Lacking any such reason, we hold, as did Judge Tenney in his thorough opinion in Harris v. Kaine, 352 F. Supp. 769 (S.D.N.Y.1972), issued subsequent to the district court's decision, that this regulation is invalid in that it exceeds statutory authority and attempts to control matters which are not legitimately within the province of Army and Guard regulation. While not in disagreement with the alternative holding in *Harris* that the regulation is also unconstitutional, we do not find it necessary to face that question.

Reversed and remanded for relief consistent with this opinion.