Raymond A. COMUNALE, Plaintiff,

v.

Harry J. MIER, Jr., Major General, Pennsylvania National Guard, Adjutant General, Commonwealth of Pennsylvania, et al., Defendants.

Civ. A. No. 72–955.

United States District Court,
W. D. Pennsylvania.

March 14, 1973.

14. That is the factual setting presented by this case.

Richard M. Goldman, Pittsburgh, Pa., for plaintiffs.

Donetta W. Ambrose, Asst. Atty. Gen., Pittsburgh, Pa., for defendants.

## MEMORANDUM and ORDER

McCUNE, District Judge.

The plaintiff is an Airman First Class in the 112th Consolidated Aircraft Maintenance Squadron of the Pennsylvania Air National Guard.

On September 1, 1972, during an inspection he was told to get a haircut by his commanding officer because his hair did not meet the regulations set forth in the Air Force Manual. The plaintiff did not comply with the order which led to further discussion during which it was discovered that plaintiff had been wearing a wig to disguise his hair which was much longer than the hair of the wig. It was the wig which the officer had found to be unmilitary. The wig was somewhat long in the back and extended over the collar which was in violation of the manual.

The wearing of a wig to drill was also in violation of the manual of regulations unless worn to cover disfigurement or baldness and plaintiff was told that he could not attend drill in either the wig or in long hair because he was not bald or disfigured. He refused to comply with the orders.

Plaintiff's commanding officer discussed the matter with him and offered non-judicial punishment or a court martial. The plaintiff chose to face a court martial but before it could be convened plaintiff filed a complaint in equity seeking a permanent injunction against the convening of the court martial, or the taking of any punitive action against the plaintiff for violation of the Air Force Regulations dated September 3, 1971, reference AFM 35–10 relating to the wearing of wigs. Plaintiff also asks for an injunction against the defendant enjoining the exclusion of plaintiff from drill while wearing a wig and from ordering plaintiff to proceed to active duty by reason of his excessive absences. It is apparent that plaintiff has not been allowed to drill and has thus become an absentee who may be ordered to proceed to active duty.

The Air Force Manual published by the Department of the Air Force governs the Air National Guard. The Air National Guard is but an arm of the Air Force. The Federal Government pays 75% of the salaries of the men and officers of the Air National Guard. The state pays 25% of the same salaries.

The pertinent regulations from the Air Force Manual are the following:

"1–12. Dress and Appearance—Men: a. General. Each member of the Air Force must maintain high standards of dress and personal appearance. As representatives of the Air Force, it is imperative that all members present a neat and well-groomed appearance to their fellow citizens and citizens of foreign nations in countries where they are serving. Further, the need for personal cleanliness, safety, and proper wear of the uniform on the part of all members requires that certain minimum standards be established throughout the Air Force. All Air Force personnel will comply with the following standards: . . . .

\*     \*     \*     \*     \*     \*

(2) Hair. Hair will be neat, clean, trimmed, and present a groomed appearance. Hair will not touch the ears or the collar except the closely cut hair on the back of the neck. It will present a tapered appearance. Hair in front will be groomed so that it does not fall below the eyebrows and will not protrude below the band of properly worn headgear. In no case will the bulk or length of the hair interfere with the proper wear of any Air Force headgear. The acceptability of a member's hair style will be based upon the criteria in this paragraph and not upon the style in which he chooses to wear his hair.

\*     \*     \*     \*     \*     \*

(6) Wigs. Wigs or hair pieces will not be worn while on duty or in uni-

form except for cosmetic reasons to cover natural baldness or physical disfiguration. If under these conditions a wig or hair piece is worn, it will conform to Air Force standards."

The Air Force contends that plaintiff is neither bald or disfigured and that when he appears for drill dressed in a wig he is out of uniform. Of course the Air Force contends that even the wig fails to meet specifications.

The plaintiff argues that he is really a civilian who devotes little of his time to the Air Force (weekend drills and summer camp) and that his occupation demands that he wear long hair. He is a member of a musical group called "Harombee" which plays so called "hard rock" for audiences of young people and argues that if he were to appear in short hair it would be thought so unusual that it would jeopardize his job. He apparently has been a musician for about 7 years and works somewhat steadily at his vocation where unusual dress and appearance is the rule rather than the exception.

He argues that wearing a long wig to his work as a musician (which is possible of course) is a hardship since a wig causes dandruff and falling hair and discomfort and he contends that he works, of course, more than he drills.

Plaintiff is 20 years of age and there is no question that he voluntarily joined the Air National Guard. He was not compelled to join. It is doubtful that he felt compelled to join to escape the draft since his lottery draft number is in excess of 200.

He contends that his wig really meets the requirements and he makes the usual argument that he should have the freedom to wear his hair as he pleases. I expect the wig could be trimmed to meet regulations so that the length of the wig is not the problem.

He asks us to enjoin the Air National Guard so that he may continue to drill in a wig citing Friedman v. Froehlke, Sec. of the Army, et al., 470 F.2d 1351, (1st Cir. 1972) and many of the so called "hair" cases including Harris v. Kaine, 352 F.Supp. 769 (S.D.N.Y.1972).

■■ We decline to issue the injunction. The plaintiff has voluntarily joined a military organization which of necessity must have standards of dress and appearance. When he joined he agreed to comply with the regulations of the organization which pays him for the time he devotes to it. In our view he should not be heard to complain now that the regulations are an infringement of his liberty. He knew when he joined the military that there were regulations he would be required to observe. By accepting the benefits of his position he obligated himself to comply with the regulations.

■ Further, in our opinion, it would be improper for a court in equity to change the Air Force manual regarding dress and appearance. We doubt the wisdom of a court interfering with the military in respect to its day to day operations. Where that interference would stop it is difficult to determine. I suppose the next step would deal with beards and the next with dress and the next with the hours one should be required to observe. It would present a difficult problem for the Air Force, once we started to make exceptions to the manual unless we were to rewrite the manual. I assume no court should entertain that thought, much less undertake the task.

In short, we decline to follow Friedman v. Froehlke, *supra,* and prefer to observe the admonition in Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L. Ed. 842 (1953), which states the following:

"The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." 345 U.S. at 94, 73 S.Ct. at 540.

We believe that it is a legitimate exercise of discretion when the Air Force attempts to control appearance. The reasons for control stated in regulation 1–12 above are valid in our opinion. In the record there is no testimony whether the wig interfered with the performance of military duty or not. There is no testimony whether wigs of the type worn by plaintiff are easily dislodged or not or whether they are obvious to the eye. We assume that whether a wig would interfere with the performance of duty would depend on the type of duty and the adhesive qualities of the wig, which we assume vary from time to time and from wig to wig. Insofar as the appearance of a wig is concerned, i. e., whether it is obvious that one is wearing a wig, we assume that this would depend as well upon the quality of the wig and the awareness one possesses of the characteristics of a wig.

We were able to recognize plaintiff's hair as the hair of a wig but we were aware, of course, that he would come to court in his wig.

The Air National Guard, absent the regulation, would, however, be required to deal with all kinds of wigs, some of which would slip at times and some of which would stay in place; and some of which would be presentable and some ludicrous. Of course, the wearing of wigs by bald or disfigured men was permitted but I suppose the Air Force could consider that it could cope with a limited use of wigs which might improve the appearance of a squadron while ruling out the indiscriminate use of them. We think this is a legitimate military decision in the operation of an Air Force located in part all over the world for obvious reasons.

We doubt that the plaintiff's employment has much to do with this issue. We do not believe that his complaint is based on the necessity to wear long hair in his employment which he could accomplish by the wearing of a long wig without difficulty. It is our opinion that plaintiff merely wishes to observe the fashion of the day, a privilege, plaintiff argues, which has been generally protected, citing Stull v. Western Beaver Jr.-Sr. High School, 459 F.2d 339 (3rd Cir. 1972), but the cases are different. Stull was merely a student and had waived none of his privileges, while, in our view, plaintiff had made a contract in effect, agreeing to abide by the Air Force regulations in return for the benefits derived for the period of his enlistment.

We believe the language of Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971) where it was said that a guardsman who has undertaken military duty on a voluntary basis cannot be heard to complain if legitimate requirements of the military curtail the manner of his appearance in civilian life, is more appropriate in light of the facts before us.

We believe that in the exercise of our discretion we should deny the injunction and it is so ordered.

This memorandum shall be considered as complying with Rule 52.