**Ralph MARTIN et al., Plaintiffs,**

**v.**

**James SCHLESINGER, Secretary of Defense, et al., Defendants.**

**Civ. A. No. 73–G–819–S.**

United States District Court,
N. D. Alabama, S. D.

Jan. 11, 1974.

William E. Swatek, Swatek & Bell, Alabaster, Ala., for plaintiffs.

Wayman G. Sherrer, U. S. Atty., Henry I. Frohsin, Asst. U. S. Atty., Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiffs in this case are members of the United States Marine Corps Reserve, 4th Battalion, 14th Marine, 4th Marine Division, stationed in Birmingham, Alabama. Plaintiffs seek by prosecution of this complaint: to enjoin the Marine Corps authorities from citing plaintiffs with unsatisfactory grades at weekend drills for the wearing of short-hair wigs; and a declaratory judgment that the plaintiffs have a constitutional right as civilians to govern their personal appearance, i. e., the length of their hair, and at the same time comply with the Marine Corps hair regulation standards by utilization of short-hair wigs. Plaintiffs also seek from this Court a permanent injunction against the United States Marine Corps, to prevent the Ma-

rine Corps authorities from harassing the Marine reservists for the wearing of wigs to reserve meetings. In addition these reservists urge upon this Court that the United States Marine Corps' "no-wig" interpretation of MCOP 1020.-34B violates the plaintiffs' constitutional rights on the basis of race and sex.

The defendants have challenged the jurisdiction of this Court to determine the merits of this cause. While this Court is satisfied that it does have jurisdiction, a close scrutiny of the jurisdiction issue is thereby merited.

## I.

First, jurisdiction is obtained by virtue of 28 U.S.C., § 1331.[1] The defendants have taken the position that the plaintiffs failed to meet the $10,000.00 amount in controversy, by virtue of the rule of McGaw v. Farrow, 472 F.2d 952 (4th Cir. 1973). This Court, however, is of the considered opinion that the activation of a civilian for a 20-month period would cause the civilian to suffer damages in excess of the $10,000.00 jurisdictional minimum.

Although the $10,000.00 amount in controversy rule is easy enough to state, it can be difficult to apply, especially to an action involving alleged deprivation of constitutional rights. Clearly our constitutional rights are among our most valuable and prized possessions; yet they are not always susceptible to precise monetary quantification. Under the usual circumstances, before any case goes to trial pursuant to the so-called "federal question" provision, the trial court must make an initial determination of whether the amount in controversy requirement is satisfied. The determination of the amount in controversy is made under the general guidance that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really

for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Company v. Red Cab Company, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). While it is not certain that the disparity in Marine as opposed to civilian salaries alone meets the $10,000.00 requirement, the Court is satisfied that the economic impact of activation cannot be limited to a comparison of relative pay scales. Removal from family is a consequence. Dislocation from a civilian job for one or two years can severely hinder advancement or permanently preclude the possibility of regaining similar opportunities at a future date. Similarly, deleterious economic consequences can ensue for the plaintiffs who, for instance, are full-time students and work part time, where activation would require the abandonment of both. The activated reservist faces the ordeal of active military service and the regimented existence which obviously is not compatible with the plaintiffs' current life styles. The activated reservist is uprooted from his home and thrust into a completely different environment. Clearly the freedoms inherent in civilian life, as contrasted to the spartan demands of the military, have a substantial economic value. This Court is of the considered opinion that, based upon the general evidence adduced in trial, the disruption of the plaintiffs' lives, the pain, suffering and inconvenience caused thereby in the limitation upon those heretofore civilian freedoms are injuries capable of being valued in excess of $10,000.00. See Friedman v. Froehlke, 470 F.2d 1351 (1st Cir. 1972); Garmon v. Warner, 358 F.Supp. 206 (W.D.N.C.1973); Etheridge v. Schlesinger, 362 F.Supp. 198 (E.D.Va.1973).

This Court is furthermore of the opinion that it has jurisdiction pursuant to 28 U.S.C. § 1361. Traditionally, relief based upon federal mandamus procedure was confined to ministerial

---

1. "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

duties.[2] However, this Court adopts the recent expansion of the scope of relief available pursuant to mandamus enunciated by the Fourth Circuit Court of Appeals in Burnett v. Tolson, 474 F.2d 877 (1973). In *Burnett* the Fourth Circuit made clear that suits by those who seek performance of constitutional duties owed them by defendants who have a clear duty to perform said duties, and where no other relief is available, are within the scope of 28 U.S.C. § 1361. In the present case the plaintiffs have based their claim upon an asserted constitutional right and the denial of that right by the defendants. This Court is of the considered opinion that, as was stated in *Garmon, supra,* "plaintiffs do not ask the courts to require the various defendants to perform a discretionary act; rather they ask that the defendants be required to recognize a constitutional right of the plaintiffs which the defendants threaten to disregard." The Fourth Circuit further stated in *Burnett,* that "Mandamus jurisdiction under 28 U.S.C. § 1361 permits flexibility in remedy", such that the injunctive and declaratory relief sought in the present case is not inconsistent with this jurisdictional basis.[3]

For the purpose of addressing itself to the issues herein presented, the Court assumes that its jurisdiction properly lies under 28 U.S.C. § 1331 and 28 U.S.C. § 1361. It is thus unnecessary for this Court to determine whether the Administrative Procedure Act (APA), 5 U.S.C. §§ 702–704, is a jurisdictional base upon which plaintiffs may rely.

## II.

The issues presented by this cause are not factually complex. In brief, the Marine Corps hair regulation, MCO–P1020.34B,[4] as interpreted by the Marine authorities, prohibits the wearing of short-hair wigs by both active and reserve male Marines. The plaintiffs, who at the time of this suit wore their hair longer than permitted by Marine regulation MCO–P1020.34B, have attempted to comply with the male Marine hair regulation through the utilization of short-hair wigs. While the above-recited regulation does not specifically prohibit the wearing of short-hair wigs by reservists to weekend reserve meetings, the regulation has been so interpreted by the high echelon of the United States Marine Corps chain of command.

The plaintiffs are civilians approximately 96 per cent of their lives and Marine reservists approximately four per cent of their lives. Plaintiffs, who engage in military activities one weekend each month and for a two-weeks period during each summer, do not challenge the right of the armed services to regulate the standards of appearance for active members. Rather, plaintiffs contend that because they spend only a four per cent fraction of their time in military pursuits, that the regulation of the *means* (wearing short-hair wigs) of compliance with the Marine hair standard is an encroachment upon their constitutional rights as civilians to wear their hair as they choose. Some of the plaintiffs have worn short-hair wigs to conceal their long hair in the past and

2. "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

3. The plaintiffs also urge that this Court has jurisdiction by virtue of the Tucker Act, 28 U.S.C. § 1346(a)(2). The Court disagrees. This section does not provide jurisdiction for suits which seek equitable relief only. See United States v. Jones, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889); R.E.D.M. Corporation v. Lo Secco, 291 F.Supp. 53 (S.D.N.Y. 1968), aff. 412 F.2d 303 (2nd Cir. 1969).

4. Marine Corps Order P1020.34B (hereinafter "MCO–P1020.34B") provides:
 Male personnel shall be well groomed at all times. They shall meet the following minimum standards.

 They shall be clean shaven, except that a non-eccentric mustache is permissible.
 The hair shall be worn neatly and closely trimmed. It shall be clipped at the sides and the back so as to present an evenly graduated appearance. The hair on top must not be over three inches in length. Long or conspicuous sideburns are prohibited.

had, according to the evidence, never been given unsatisfactory grades for hair length. The evidence at trial shows that it was not until the Marine authorities discovered that these short-hair wigs were being worn that the plaintiffs were informed that such wigs were not sufficient compliance with Marine hair regulation standards. Plaintiffs were then informed that continued utilization of short-hair wigs to cover the reservists' long hair would result in unsatisfactory grades for weekend drills. Accumulation of a sufficient number of unsatisfactory grades can lead to involuntary activation of the reservist into the active Marine Corps.

The findings of fact as to the viability of short-hair wigs as a substitute compliance with MCO–P1020.34B are as follows: At trial the evidence does not, for all cases, establish whether or not short-hair wigs would or would not interfere with performance of military duty. This Court cannot find that any particular wig would or would not be easily dislodged or whether any particular wig would or would not be obvious to the eye of the team leader, drill inspector, or inspecting officer. The Court assumes that whether a wig would or would not interfere with performance of duty would depend on the type duty and the adhesive quality of the wig, which the Court assumes varies from time to time and from wig to wig. Insofar as the appearance of a wig is concerned, i. e., whether it has the "outward appearance" of complying with MCO–P1020.-34B, the Court assumes that this outward appearance would depend upon the quality of the wig as well as upon the awareness of the team leader, drill inspector, or inspecting officer of the characteristics of any particular wig.

The Marine Corps authorities, absent the "no-wig" interpretation of MCO–P1020.34B, would be required to deal with all kinds of wigs, some of which would slip at times and some of which would stay in place; some of which would be presentable and some of which would be ludicrous. This Court is hence of the considered opinion that the Marine Corps authorities are in the best position to determine whether or not the wearing of short-hair wigs complies with the Marine hair standard as established for both active and reserve Marines. It is not for this Court to become enmeshed in the legitimate exercise of discretion of the United States Marine Corps authorities in their attempts to control the appearance of its troops, maintain discipline, and instill into the individual, whether he be active or reserve, the esprit de corps that is in the tradition of the Marine Corps.

### III.

### CONCLUSIONS OF LAW

Before commencing the Court's legal opinion that is to govern this cause, it is apposite to note that this Court is inclined to believe that in these recent times the significance of what is considered by many to be incidental grooming matters has been exaggerated by individuals as well as by institutions. This Court further notes that in this Circuit, albeit by a seriously divided en banc court, the right of citizens to choose their personal mode of hair grooming has been recognized as a right accorded constitutional protection. Lansdale v. Tyler Junior College, 470 F. 2d 659 (5th Cir. 1972). Moreover, the extent to which such "hair rights" may be infringed differs depending upon the circumstances wherein the right is sought to be asserted. Compare the two en banc decisions in Karr v. Schmidt, 460 F.2d 609 (5th Cir. 1972) and Lansdale v. Tyler Junior College, 470 F.2d 659 (5th Cir. 1972). Both of these decisions are distinguishable because one involves the regulation of hair in high schools on one hand and junior colleges on the other. This Court is of the firm opinion that, as was "emphasized" in Lansdale, 470 F.2d at 663, there is a distinction to be drawn with regard to the extent to which invasions of personal modes of hair styles may be permissible.

There is a developing body of case law dealing with the general issue of mili-

tary hair and grooming regulations. Some of the decisions appear to support the plaintiffs' position[5] while others tend to favor the defendants.[6] It is unnecessary and it would be premature to marshal and analyze all the relevant authorities. Rather, the Court will be restricted to the Fifth Circuit decisions which seem to bear upon the point in issue.

At the outset it is proper to observe that there is a substantial lack of unanimity among the judges of the Fifth Circuit concerning the status of hair as a constitutional issue.[7] This Court is guided, however, by the two Fifth Circuit decisions of Doyle v. Koelbl, 434 F. 2d 1014 (5th Cir. 1970) and Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971). In *Doyle* a panel of the Fifth Circuit expressly upheld the Air Force haircut regulations; and, in *Mindes*, the Court stressed the policy against judicial interference in military affairs, citing decisions in the Second and Seventh Circuits dealing specifically with the application of hair regulations to reservists in national guards. See Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971), and Raderman v. Kaine, 411 F.2d 1102 (2nd Cir. 1969).

This Court is of the opinion that, in the language of Anderson v. Laird, 437 F.2d at 915, "He has undertaken a type of military duty on a voluntary basis and cannot be heard to complain if the legitimate requirements of necessity do curtail to some extent the matter of his appearance in civilian life." It would be a gross impropriety for this Court in equity to rewrite the United States Marine Corps Manual which regulates dress and appearance. There appears to be little wisdom in the federal court's interfering with the military in respect to its day-to-day operations. As was stated in *Comunale, supra,* "Where that interference would stop it is difficult to determine. . . . The next step would deal with beards and the next step with dress and the next step with the hours one should be required to observe. It would present a difficult problem for the . . . [Marine Corps], once we started to make exceptions to the manual unless we were to rewrite the manual. I assume no court should entertain that thought, much less undertake the task." 355 F.Supp. 429 (1973).

While the Second and Seventh Circuit cases of *Anderson* and *Raderman* (which were cited with approval by the Fifth Circuit in *Mindes, supra*) did not involve the issue of short-hair wigs, each emphasized that the military's disciplinary measures in response to what it felt was not the required "neat and soldierly appearance" on the part of the reservist, was not subject to judicial review.

 It cannot be seriously disputed that certain constitutional rights are and must be suspended or curtailed in the name of military discipline. Raderman v. Kaine, 411 F.2d at 1104; and, "The rights of men in the armed forces

5. Friedman v. Froehlke, *supra;* Harris v. Kaine, 352 F.Supp. 769 (S.D.N.Y.1972); Hough v. Seaman, 357 F.Supp. 1145 (W.D. N.C.1973); Garmon v. Warner, 358 F.Supp. 206 (W.D.N.C.1973); Kruger v. Laird, Civil No. 4–72, Civ. 321 (D.Minn., Nov. 13, 1972); Miller v. Acker, Civil No. 73–L–121 (D.Neb., Apr. 30, 1973); Klinkhammer v. Richardson, Civil No. 4–73, Civ. 71 (D. Minn., May 29, 1973). See also Bellamy v. Froehlke, 347 F.Supp. 1241 (W.D.N.C.1972) (restraining order granted); Good v. Mauriello, 358 F.Supp. 1140 (W.D.N.Y.1973) (preliminary injunction granted).

6. Cossey v. Seamans, 344 F.Supp. 1368 (W. D.Okl.1972); Baugh v. Bennett, 350 F. Supp. 1248 (D.Idaho, 1972); McWhirter v. Froehlke, 351 F.Supp. 1098 (D.S.C.1972); Comunale v. Mier, 355 F.Supp. 429 W.D. Pa.1973); Talley v. McLucas, 366 F.Supp. 1241 (N.D.Texas, 1973); See also Whitis v. United States, 368 F.Supp. 821 (M.D. Fla., 1973), appeal dismissed Civil No. 73–3123 (5th Cir. Oct. 18, 1973), (preliminary injunction denied); Hipple v. Warner, 368 F.Supp. 301 (N.D.Ga., 1973).

7. Compare the two en banc decisions in Karr v. Schmidt, 460 F.2d 609 (5th Cir. 1972) and Lansdale v. Tyler Junior College, 470 F.2d 659 (5th Cir. 1972).

must perforce be conditioned to meet certain overriding demands of discipline and duty." Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953). Moreover, in matters properly within the area of military discretion, it is not for the civil court to judge whether the military has properly determined the balance between military needs and personal rights. *Burns, supra,* 346 U.S. at 140, 73 S.Ct. 1045. This Court is of the firm opinion that whether or not reservists may wear wigs over their long hair at reserve meetings is for the Marine Corps authorities and not for this Court to decide. Enforcement of the military's rules and regulations may frequently lead to hardships for individuals, but that does not necessarily mean the federal courthouse is always the proper place to resolve conflicts which result from such rules and regulations.

In summation, this Court declines to follow Friedman v. Froehlke, 470 F.2d 1351 (1st Cir. 1972); but rather, this Court adopts the decision and language found in Comunale v. Mier, *supra,* 355 F.Supp. at 431:

"The plaintiff has voluntarily joined a military organization which of necessity must have standards of dress and appearance. When he joined he agreed to comply with the regulations of the organization which pays him for the time he devotes to it. In our view he should not be heard to complain now that the regulations are an infringement of his liberty. By accepting the benefits of his position he obligated himself to comply with the regulations."

This Court feels compelled under the law to observe our Supreme Court's admonition found in Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), a case in which our Supreme Court dealt with military assignments and said:

". . . the military constitutes a specialized community governed by a separate discipline from that of civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." 345 U.S. at 94, 73 S.Ct. at 540.

This Court does not feel that the length of one's hair in any way reflects the degree of loyalty or dedication an individual may feel for his country. Nor is the Court saying that those who volunteer for military service waive all rights "to challenge the military wisdom or constitutional validity of military regulations." Garmon v. Warner, 358 F.Supp. at 212. The Court does hold, however, that the issue herein raised, in the circumstances heretofore shown, is not such that it is subject to this Court's review.

■ Plaintiffs have asserted that the Marine Corps' "no-wig" interpretation of MCO–P1020.34B is unconstitutional because women marines are permitted to wear wigs by Marine Corps General Regulations and Instructions, Chapter I, Section 1101, Section 2(a), which reads in part:

"Wigs, if worn in uniform, must look natural and conform to all of the above listed regulations."

This Court is of the considered opinion that because women are not permitted to perform combat duty, but rather serve generally in administrative duties as opposed to serving as part of the combat fighting force, that many rules and regulations treat women marines differently simply for legitimate biological as well as disciplinary reasons. This Court does not possess the military expertise to make a military determination and judgment that the different regulations concerning wigs are not a valid exercise of military discretion with which this Court should not interfere. The ramifications of Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), do not present a procedural or substantive due process issue of sufficient magnitude to cause this Court to interfere with what this Court views as

a legitimate exercise of military judgment and military discretion.

 Likewise, this Court finds no due process deprivation on the ground of race. Although the Marine Corps, for cultural and disciplinary reasons, has permitted negroes to wear their hair in an afro style, the length and other hair regulations remained unchanged.

In accordance with the above conclusions, the Court expressly holds that the matter now before this Court is not properly subject to its review. Accordingly, plaintiff's prayer for a permanent injunction against the Marine Corps is hereby denied.