Steve **WHITIS** and Alan K. Fout, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**UNITED STATES** of America et al., Defendants.

No. 73–417–Civ–T–H.

United States District Court, M. D. Florida, Tampa Division.

Jan. 10, 1974.

Gerald R. Herms, Tampa, Fla., for plaintiffs.

D. Frank Winkles, Asst. U. S. Atty., Tampa, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HODGES, District Judge.

The complaint in this case was filed on August 21, 1973, by Steve Whitis and Alan K. Fout as members of the 4th Amphibian Tractor Battalion, United States Marine Corps Reserve, Tampa, Florida. Plaintiffs prayed for declaratory and injunctive relief against a Marine Corps policy prohibiting the wearing of short-hair wigs by long-hair reservists as an artificial means of complying with the Marine Corps regulation pertaining to grooming and hair length.

The complaint alleged that the Plaintiffs were threatened with immediate induction into full time active duty unless the Defendants were temporarily restrained. Accordingly, on August 24, 1973, the Court issued a temporary restraining order pursuant to Rule 65, F.R.Civ.P., and scheduled a hearing on August 31 to consider the application for a preliminary injunction. That hearing was held and testimony was taken; and on September 4, 1973, the Court entered an order denying the application for preliminary injunction and dissolving the temporary restraining order. Whitis v. United States, 368 F.Supp. 821 (M.D.Fla.1973), appeal dismissed October 18, 1973, Fifth Circuit, Case No. 73–3123.

The case was then scheduled for pretrial conference on October 23, 1973, and for non-jury trial during the weeks of October 29 and November 5, 1973. When the case was reached on the trial calendar, counsel stipulated that the issues be submitted to the Court for decision on the evidence adduced during the

hearing on August 31 together with the transcripts of two depositions taken in Washington, D. C., on November 1, 1973.

In the meantime, although the suit was instituted as a class action pursuant to Rule 23, F.R.Civ.P., counsel for the Plaintiffs moved to join, as additional party-plaintiffs, a number of other members of the 4th Amphibian Tractor Battalion, USMCR, who "wish to wear short hair wigs to conform their appearance to Marine Corps hair length regulations during their week-end drills." That motion was granted by the Court on October 3, 1973; and, accordingly, pursuant to Rule 23(c)(1), the Court has determined that the suit should not proceed as a class action. See Rule 23(a)(1), F.R.Civ.P.

## FINDINGS OF FACT

1. Standing Marine Corps Order P1020.34B, paragraph 1101, requires:

"Male personnel shall be well groomed at all times. They shall meet the following minimum standards:

They shall be clean shaven, except that a non-eccentric moustache is permissible.

The hair shall be worn neatly and closely trimmed. It shall be clipped at the sides and back so as to present an evenly graduated appearance. The hair on top must not be over three inches in length. Long or conspicuous sideburns are prohibited."

2. The above order or regulation is applicable to reservists as well as regular personnel on active duty; and, in particular, it applies to reservists while in attendance at their regular monthly meetings or drills.

3. Although the regulation does not mention the wearing of wigs *per se*, it is the established policy of the Marine Corps "that wigs are neither authorized nor permitted for any male member of the Marine Corps Reserve and will not be allowed under any circumstances."

4. A reservist's violation of the anti-wig policy is treated by the Marine Corps Reserve as justifying a grade of "unsatisfactory" for the monthly drill or drills involved, and five such marks or grades may result in an order placing the offender on active duty for a period of two years.

5. The Plaintiffs are members of the United States Marine Corps Reserve, 4th Amphibian Tractor Battalion, Tampa, Florida. Each desires to wear his natural hair in a longer style than that permitted by the standing order or regulation, while ostensibly complying with the regulation in terms of visual appearance by means of wearing short-hair wigs during those periods on duty attending monthly meetings or drills.

6. The original Plaintiffs, Alan K. Fout and Steve S. Whitis, are presumably representative of the remaining named Plaintiffs, and their respective situations are as follows:

(a) Fout is 23 years of age; is married; has one infant child; and is employed as a carpenter. He enlisted in the Marine Corps Reserve approximately 4½ years ago, served 6 months on active duty, thereafter became a member of a reserve unit in Ohio, and has been a member of his present unit in Tampa, Florida, since January, 1973. He is a Lance Corporal in the Reserve with a duty assignment of Mechanic and Truck Driver. His obligation as a member of the Reserve is to attend drills or meetings one week-end each month as well as Summer Camp. He currently wears his hair in a style longer than that permitted by the Marine Corps regulation. He has selected that hair style at the request of his wife in order to conform with the contemporary grooming habits of his friends and peers, fearing social ostracism if he failed to do so. During the several months immediately preceding the filing of this suit, Fout wore a short-hair wig to his monthly drills in attempting to comply, in appearance, with the requirements of the grooming and hair length regulation. He was detected and ordered to get a haircut. He had not done so at the time this suit was filed, and, as a consequence, was in peril of receiving unsatisfactory grades for

his monthly drill meetings which, in turn, could result in his being ordered to active duty. He further testified that while a haircut would not cause any impairment of his job or economic status as a civilian, neither in his opinion did the wearing of a wig constitute any interference with the performance of his duties as a Marine Reservist.

(b) Whitis is 24 years of age; is unmarried; and is employed as a salesman. He enlisted in his present reserve unit 3 years ago, and like Fout, is also assigned the duty of Mechanic and Truck Driver. He wears his hair long as a matter of personal taste compatible with that of his friends and associates, and has likewise resorted to the device of a short-hair wig in attempting compliance with the regulation while attending monthly reserve meetings for the last two months. At the time this suit was filed his status in all other respects was substantially the same as Fout's.

7. There was some testimony tending to show disparity in the application of the regulation and policy to male reservists within the Plaintiffs' unit, but the Court finds that such instances were caused by oversights or slight differences in individual judgment, rather than being the result of a surreptitious policy or established practice of invidious discrimination brought about by accident or design. As stated earlier, the regulation of hair length is intended by the Defendants to be applicable throughout the Marine Corps, regardless of rank, to regulars and reservists alike.

8. The rationale or purpose of the hair length regulation and anti-wig policy was described by the current Director of the Marine Corps Reserve, Brigadier General William H. Lanagan. He testified, in essence, that uniformity of appearance, including the wearing of prescribed military uniforms and accessories in conjunction with minimum grooming standards, is essential to the inculcation of group or unit identity on the part of its individual members, embracing within that concept such attributes as group pride and morale, inter-dependence and confidence in each other, military discipline and obedience, as well as self discipline and adjustment to military life, all of which are indispensable to molding and maintaining an efficient, combat-ready, military force. He further testified, with reference to reservists, that the application of a relaxed grooming standard to that group, as distinguished from those on full time active duty, would not only be inconsistent with the general objectives just stated, but would also foster an unwanted tension and divisiveness between regulars and reservists within the Marine Corps as a whole. Hence, concerning the subject of wigs in particular, he opined:

". . . if this were to become a wide-spread practice in the reserves at drills, I believe the overall impact on morale, in the regular Marine Corps in particular, as the result of the knowledge that this was the practice in the reserves, would be adverse in the ways that I've discussed."

\*　　\*　　\*　　\*　　\*　　\*

"Based on thirty years of watching Marines get away with regs at various times, my answer would be yes, unquestionably. An individual who succeeded in getting away with a regulation, particularly a controversial one, over a long period of time would very likely begin to question other regulations and perhaps test his ability to get around them. And this being the case, and if it were known by his peers, the factor that I mentioned in one of my first answers, the feeling of trust and confidence between members of a military unit, would be seriously affected in the case of this individual. He would not be trusted; he would be increasingly distrusted by the other members of the unit who did not choose to get around the particular regulation as this guy was doing."

9. The testimony of one of Plaintiffs in this very case tends to lend support to some of the views expressed by General Lanagan. Mr. Fout testified as follows:

"Q. Were you ever ordered to have your hair cut?

A. He ordered me, and then I told him he didn't give me the rights, my rights first. And then he turned around and he said it wasn't an order or whatever—I don't know exactly how it was. We went around about with it for about two hours."

\*　　\*　　\*　　\*　　\*　　\*

"Q. And what did they order you to do [upon discovery of the wig]?

A. Go in and talk to the C.O.

Q. And then what happened?

A. And then he said to take it off.

Q. Did you take it off?

A. Yes—later. After we argued for about an hour and a half or whatever."

## CONCLUSIONS OF LAW

1. Defendants challenge the jurisdiction of the Court to entertain the Plaintiffs' claim. In the main, however, their contentions fail to perceive the all important distinction between jurisdictional power, on the one hand, and, on the other, the substantive question as to whether that power should be exercised with regard to the claim as pleaded or proved. Recognizing that the complaint, when liberally construed, alleges deprivation of a constitutionally protected right by arbitrary action, the Court concludes that raw jurisdiction exists *inter alia* pursuant to 28 U.S.C.A. § 1361. Whether the Plaintiffs are entitled to relief on their claim is another matter going beyond jurisdiction and into the merit (or lack of merit) of the cause. Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971).

2. The selection between tonsorial or hirsute habit as a constitutional right to be insulated from governmental regulation is, by quantitive measurement, a contemporary issue of the first magnitude. The school cases on the subject, too numerous to cite, probe every nook and cranny of the Constitution in search of some mention of the right, either expressed or implied; and the courts that have persevered in the quest to find what they were looking for were then confronted with the problem of ranking the right in the constitutional spectrum to determine the degree of permissible limitation. Though not dispositive of this case, the tandem *en banc* decisions of the Fifth Circuit in Karr v. Schmidt, 460 F.2d 609 (5th Cir. 1972) and Lansdale v. Tyler Junior College, 470 F.2d 659 (5th Cir. 1972), are at least controlling with respect to these fundamental constitutional issues. When read together and reconciled, those decisions teach that in the Fifth Circuit one has the constitutional prerogative, as a matter of substantive Due Process and Equal Protection guaranteed by the Fourteenth Amendment, to wear one's hair as one chooses subject only to rational or non-arbitrary regulation by the states. While the constitutional principle remains constant, regulation of hair length in high schools is *per se* rational (*Karr*), and at the college level it is *per se* irrational and arbitrary (*Lansdale*). To avoid rebuke for inattention to constitutional detail, it should be noted that no state action is involved in this case so that the Fourteenth Amendment is inapposite; but if hair length is protected from the states by the Fourteenth, then surely the Fifth operates with equal force to restrain the Federal Government. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

3. The Plaintiffs in this case rely upon one Circuit Court opinion and several recent decisions in the District Courts. The lone authority at the Circuit level is the decision of the First Circuit in Friedman v. Froehlke, 470 F. 2d 1351 (1st Cir. 1972), dealing with the Army regulation as applied to members of the National Guard, prohibiting the use of wigs during periodic drills. Citing its earlier high school hair decision in Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970), the Court invalidated application of the regulation to Guardsmen, finding no legitimate or rational military basis for the prohibition of wigs in that context. On the other hand, while not involving the use of wigs as such, at least three other Circuits have upheld the application of mili-

tary hair regulations to reservists in addition to those on active duty. Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971); Raderman v. Kaine, 411 F.2d 1102 (2nd Cir. 1969); Agrati v. Laird, 440 F.2d 683 (9th Cir. 1971). In a very real sense, therefore, the present case comes down to this: If it is assumed, as held in the decisions last cited, that military hair regulations pass constitutional muster even when applied to Guardsmen and Reservists, does the added prohibition of wigs as an attempted method of compliance pass over the constitutional line? There are District Court decisions squarely holding that it does. E. g., Harris v. Kaine, 352 F.Supp. 769 (S. D.N.Y.1972); Garmon v. Warner, 358 F.Supp. 206 (W.D.N.C.1973); Good v. Mauriello, 358 F.Supp. 1140 (W.D.N.Y. 1973). Appraisal of these decisions, particularly in an effort to project the Fifth Circuit view, requires threshold recognition of three basic premises: (1) the relatively low position of hair length in the spectrum of constitutional rights; (2) the apparent alignment of the Fifth Circuit with those decisions approving application of the hair length regulations in general to reservists as well as those on active duty; and (3) the independent principle of non-interference in military affairs.

4. First, in Karr v. Schmidt, *supra*, the Court made it clear that although a choice of hair style is within the penumbra of the constitution, it is a "lesser liberty" subject to governmental regulation unless "this court can perceive no rational basis on which [such restriction] is founded." (460 F.2d at 616). It is also significant, particularly in view of the First Circuit decision in Friedman v. Froehlke, *supra*, that the Court in *Karr* expressly rejected the First Circuit's seemingly higher classification of the right in Richards v. Thurston, *supra*. (See *Karr*, 460 F.2d at 615, note 12). Secondly, it seems equally clear and consistent that our Court would embrace without hesitation those decisions in other Circuits which have approved military hair regulations as applied to reservists in addition to those

on active duty. The Second Circuit decision in Raderman v. Kaine, *supra*, has been cited by the Court with approval on at least two similar occasions. See Doyle v. Koelbl, 434 F.2d 1014, 1015 (5th Cir. 1970), and Mindes v. Seaman, 453 F.2d 197, 200 (5th Cir. 1971). Third, and last, the opinion in Mindes v. Seaman is also illustrative of the Court's recognition of the principle against judicial interference in military affairs; and that principle has recently received vigorous reinforcement by the Supreme Court decision in Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973).

5. The case may thus be put in the form of the following, multifarious question: If hair length is a lesser constitutional right which is subject to governmental restriction on any rational basis; and if such restrictions in general are found to be rational and validly applied to military reservists in addition to those on active duty; and if the commanding general of the military service testifies that wigs are not an acceptable means of compliance because such devices tend to invite circumvention, thus subverting one of the principal purposes of the regulation itself; and if one is given a binding judicial determination in another context that regulation of hair length by high school administrators for purposes of general discipline is *per se* rational and valid; and if one is also given an added *constitutional* principle against non-interference in military affairs (a principle not present in the school hair cases); then how does one conclude that a ban against wigs is irrational and unconstitutional? When the issue is stated in this way it seems manifest that a Court could reach that conclusion only by substituting its opinion for that of the commanders appointed over the military by the President and the Congress. While it might be said that Courts are in the business of measuring their opinions of right and wrong against the legal opinions of litigants, the invitation to split hairs, both literally and constitutionally, must be rejected when it comes to military regula-

tion of a lesser liberty for a stated military purpose. This is required, not only by sound policies of judicial restraint, but by the Constitution itself. "In listing all his constitutional impairments plaintiff forgets that it is the Constitution which authorizes the creation of an Army." Raderman v. Kaine, *supra*, 411 F.2d at 1104. See Article I, § 8, clauses 12 through 16 of the Constitution, and Cf., Orloff v. Willoughby, 345 U.S. 82, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

"In relying on the Due Process Clause of the Fourteenth Amendment, respondents seem to overlook the explicit command of Art. I, § 8, cl. 16, . . . . ."

* * * * * *

"The majority opinion in the Court of Appeals does not mention this very relevant provision of the Constitution. Yet that provision is explicit that the Congress shall have the responsibility for organizing, arming and disciplining the Militia (now the National Guard), with certain responsibilities being reserved to the respective States."

* * * * * *

"It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches, directly responsible—as the Judicial Branch is not—to the elective process. Moreover, it is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches. The ultimate responsibility for these decisions are appropriately vested in branches of the government which are periodically subject to electoral accountability. It is this power of oversight and control of military force by elected representatives and officials which underlies our entire constitutional system; the majority

opinion of the Court of Appeals failed to give appropriate weight to this separation of powers." Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 2444, 2446, 37 L.Ed.2d 407 (1973).

■ 6. No Court has ever suggested —and no such inference should be drawn from this decision—that all military action is beyond judicial review, or that the provisions of Article I, § 8 of the Constitution grant some form of absolute immunity to the military services against assertion of the individual freedoms protected by the Bill of Rights. As held at the outset of these conclusions, it is not a question of jurisdiction or judicial power; it is, instead, a cautious exercise of such power lest the exception become the rule. As the Court said in Anderson v. Laird, supra, 437 F. 2d at 914:

"However, 'the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty.' Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953). It cannot be seriously disputed that certain constitutional rights are and must be suspended or curtailed in the name of military discipline. Raderman v. Kaine, 411 F.2d 1102, 1104 (2d Cir. 1969), cert. den. 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447.

"[3] And, in matters properly within the area of military discretion, it is not for civil courts to judge whether the military has properly determined the balance between military needs and personal rights. *See Burns, supra*, 346 U.S. at 140, 73 S.Ct. 1045."

■ 7. In the judgment of this Court, particularly in view of the more recent holding of the Supreme Court in Gilligan v. Morgan, the decisions of the First Circuit and the several District Courts invalidating the anti-wig policy (cited supra, paragraph 3), while articulating a recognition of the principle of non-interference, nevertheless proceed to violate that principle in succumbing to the enticement afforded by a policy of debatable wisdom and importance. But

that is precisely the type of minimal curtailment of "lesser" constitutional rights that the principle of non-interference leaves to the discretion of professional military officers who, like Federal Judges, are appointed by the President, confirmed by the Congress, and sworn to uphold the Constitution. If a court decrees that wigs may not be constitutionally forbidden by the military, then where will such judicial scrutiny end? Would a bright green wig of proper style and length be permitted? It is the conclusion of this Court, in accord with the more recent decisions of my brother District Judges in this Circuit, that the Marine Corps' anti-wig policy is not so arbitrary and irrational as to be an abuse of military discretion rising to a level of such constitutional significance that it transcends the principle of non-interference in military affairs and requires judicial intervention. See, Talley v. McLucas, 366 F.Supp. 1241 (N.D. Tex.1973); and Hipple. v. Warner, 368 F.Supp. 301 (N.D.Ga.1973).

8. The Clerk is directed to enter final judgment in favor of the Defendants with costs to be assessed according to law.