David Kent CAMPBELL, Lance Corporal, U. S. Marine Corps Reserve et al., Plaintiffs-Appellants,

v.

Michael J. BEAUGHLER, Captain, U. S. Marine Corps Reserve, Commanding Officer, Company D, 6th Engineering Battalion, FMF, et al., Defendants-Appellees.

No. 74–1763.

United States Court of Appeals, Ninth Circuit.

June 23, 1975.

———

Kenneth R. Reed, Phoenix, Ariz., for plaintiffs-appellants.

George B. Nielsen, Jr., Asst. U. S. Atty., Phoenix, Ariz., for defendants-appellees.

## OPINION ·

Before WRIGHT and CHOY, Circuit Judges, and SOLOMON, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Appellants are enlisted reservists in the United States Marine Corps who refuse to comply with hair length regulations[1] and the Corps' interpretation of them. Captain Beaughler, also a reservist, is their commanding officer. All are part of the Ready Reserve, the members of which are required to attend 48 drills during each year and to serve on active training duty for at least 14 days of each year. Failure to complete the training satisfactorily subjects a member to a possible call to active duty of 45 days or two years.

Appellants claim that the haircut regulations coupled with the prohibition against men wearing wigs deny them their constitutional rights of privacy, of freedom of expression and equal protection of the laws. The last contention relates to the different regulations applicable to women in the Corps which allow them to wear wigs of a complying short hair style.

In the court below, the appellants sought declaratory and injunctive relief to restrain the enforcement of the Corps' regulation. Both parties moved for summary judgment, stating that there were no disputed questions of fact. The dis-

trict court granted the defendants' motion. We affirm.

In support of the defendants' motion for summary judgment, Captain Beaughler by affidavit explained the nature of active duty training for ready reservists and the reasons for haircut regulations. He noted that the purpose of such training was to achieve combat readiness by strenuous physical activity, gas mask training, rope climbing, scaling of obstacles and observance of proper field sanitation. Wigs, he said, could present a safety hazard by preventing gas masks from sealing properly, by causing vision impairment, and by interfering with the wearing of close-fitting earphones in operating mine detector units. He noted the need to integrate the reservists into a single Corps with regular Marines, with common standards uniformly enforced. Discipline breaks down, he said, if reservists are allowed to wear wigs.

General Robert E. Cushman, Jr., Commandant of the Marine Corps, amplified some of these reasons. He emphasized in his affidavit the need for uniformity of physical appearance in identifying an individual combat Marine with his unit and his colleagues. If regulars and reservists are to work effectively together in mutual trust and confidence, the two-week training period which brings them together must duplicate so far as possible the conditions which they would face upon mobilization.

None of this was refuted in the identical affidavits of the appellants who said only that they knew of "no instance in which a short hair wig has been a hazard in connection with the military activities of reservists."

 This court has held that hair length regulations are a rational exercise of regulatory power. *King v. Saddleback Junior College District,* 445 F.2d

———

* Senior District Judge, of the District of Oregon.

[1]. The Marine Corps Personnel Manual § 1101(1)(b) provides:

"Hair shall be worn neatly and closely trimmed. It shall be clipped at the sides and back so as to present an evenly graduated appearance. The hair on the top must not be over three inches in length. Long or conspicuous sideburns are prohibited."

932 (9th Cir. 1971). Moreover, we have held that an individual reservist possesses no constitutional right to choose his own hair style as against military regulations, and that the military has a right to govern its affairs without untoward intervention from the judiciary. *Agrati v. Laird*, 440 F.2d 683 (9th Cir. 1971).

Despite these authorities, and basing their argument on *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), plaintiffs argue that the Marine Corps hair style regulations, which allow women to wear short-hair wigs in order to comply with these regulations, create an arbitrary and unreasonable classification based on sex and, therefore, are unconstitutional. Plaintiffs urge us to subject the Marine regulations to the strict scrutiny applicable to inherently suspect classifications.

Plaintiffs' reliance on *Frontiero, supra,* is misplaced. Although a plurality of the Court in that case concluded that sex is an inherently suspect classification, the majority holding was that an Air Force regulation which distinguished between males and females for purposes of proving dependents' status is not rationally based when enacted solely to facilitate administrative convenience, and is,

therefore, unconstitutional. Moreover, recent Supreme Court decisions indicate that only a rational relationship between legitimate governmental interests and the sex classification need be found. *Stanton v. Stanton*, 42 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975).

■ The district judge properly believed that the safety and compatibility of Marine regulars and reservists are legitimate governmental interests and that a prohibition of wigs for men is rationally related to that objective. That this prohibition is rationally based is reinforced by the fact that women Marines do not train for combat, operate heavy equipment, wear gas masks, scale obstacles or operate mine detector units.

In view of the decision in *Schlesinger, supra,* and prior decisions of this court, we find that no constitutional issue [2] is presented either by the regulations prescribing hair length and style nor the interpretation by the Marine Corps which precludes the use of wigs by ready reservists at active duty training.

Affirmed.

---

**2.** A recent *en banc* decision in the Third Circuit in *Zeller v. Donegal School District Board of Education*, 517 F.2d 600 (3 Cir. 1975), raises serious doubts that hair length regulations pose any cognizable constitutional questions. That court's plurality opinion by Judge Aldisert says in part:

"[W]e determine today that the federal court system is ill-equipped to make value judgments on hair lengths in terms of the Constitution—whether an athletic code requiring that hair be 'neatly trimmed' would not pass muster, whether one putting the limit on hair twelve inches below the collar would pass, or whether one drawing the line at four inches below the collar would be more difficult of solution. A very real concern is that the decisional process not become, in the phrase of Justice Hopkins, 'amorphous and growing out of a shifting foundation laid on morals or community welfare' so as to invite 'indiscriminate use by the courts in the name of either expediency or a private view of morality—both of which take on color and shade from the eye of the beholder.' "

\* \* \* \* \* \*

"Having made a policy determination, it is important to underscore why we have drawn the line we have. In full recognition of the duty of federal courts to be hospitable to claims for redress of constitutional infringements, we have ruled deliberately. We have acted because of a felt concern that the sturdy tree of the federal judiciary is in need of pruning if it is to remain strong and stand tall, protecting basic individual liberties against unconstitutional impingements. We are concerned that, if the trimming process does not begin somewhere, the tree may topple of its own weight; that the proliferation of claims with exotic concepts of real or imagined constitutional deprivations may very well dilute protections now assured basic rights. We have a genuine fear of 'trivialization' of the Constitution. If this should occur, some of the monumental accomplishments in defining fundamental human rights and liberties may be compromised, and the protections accorded those rights and liberties threatened."

At 606, 607.