**Alc Milo A. AYEN and Alc Micheal B. Thompson, Petitioners,**

v.

**John L. McLUCAS, Secretary of the Air Force, et al., Respondents.**

**No. Civil LV 74-168 RDF.**

United States District Court, D. Nevada.

July 31, 1975.

Richard P. Fox and Max Gest, Los Angeles, Cal., for petitioners.

Lawrence J. Semenza, U. S. Atty. by William B. Terry, Asst. U. S. Atty., Las Vegas, Nev., for respondents.

ORDER GRANTING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PETITIONERS' MOTION FOR SUMMARY JUDGMENT

ROGER D. FOLEY, Chief Judge.

FACTS

Petitioners initiated the instant lawsuit on November 1, 1974, seeking mandamus, injunctive and declaratory relief. The jurisdiction of the Court was invoked pursuant to the following statutes: Title 28 U.S.C. §§ 108, 1361, 1651, 2201, 2202, and Title 5 U.S.C. § 703. Petitioners' motion for summary judgment was filed on February 11, 1975, and respondents' motion to dismiss, or, in the alternative, for summary judgment, was filed on March 20, 1975. After oral argument on May 22, 1975, these motions were submitted for the Court's consideration.

Petitioners in the instant case are United States Air Force enlisted personnel currently on active duty and stationed at Nellis Air Force Base, Nevada. The Respondents, all of whom are sued in their official capacities, are, respectively: John L. McLucas, Secretary of the Air Force; Colonel Deming, Commanding Officer of Nellis Air Force Base, Nevada; and Lieutenant Colonel Don L. James, Commanding Officer of the 57th Avionics Maintenance Squadron, Nellis Air Force Base, Nevada, and petitioners' immediate superior. Petitioners' entire case revolves around their desire to wear their hair in a length in keeping with the styles worn by their civilian contemporaries, but somewhat longer than that permitted by the pertinent Air Force Regulations. Petitioners do not challenge the efficacy of the pertinent Air Force Appearance Regulations; rather, they assert that the regulations violate their constitutional right to equal protection since they deny peti-

tioners the right to comply with the appearance standards by wearing "short hair" wigs to cover their longer natural hair while on duty, while at the same time allowing female active duty Air Force personnel to wear wigs while on duty. In short then, petitioners are not challenging the appearance and grooming standards promulgated by the Air Force, rather, they are challenging the Air Force's denial of a means by which they may comply with those standards. Petitioners have moved for summary judgment on their denial of equal protection claim and respondents have moved to dismiss, on the grounds that the Court lacks subject matter jurisdiction and/or the petitioners have failed to state a claim upon which relief may be granted or, in the alternative, for summary judgment in their favor.

ISSUE

SHOULD ANY OF THE PENDING MOTIONS BE GRANTED?

DISCUSSION

The pertinent regulations that petitioners are challenging are contained in Air Force Manual (AFM) No. 35–10. In pertinent part AFM 35–10 provides that:

"1–12. Dress and Appearance—Men:
a. General. Each Air Force member must maintain a high standard of dress and personal appearance. The standard is comprised of four elements—neatness, cleanliness, safety, and military image. The first three are absolute, objective criteria required for the efficiency, health and well-being of the force. The fourth—military image—is a subjective but necessary element of the standard because the American public and its elected representatives draw certain conclusions as to military effectiveness based on what they see, that is, the image the Air Force presents. The key element of this image is the appearance in uniform of members of the Air Force. This appearance must instill public confidence and leave no

doubt that the serviceman lives by a common standard and is responsive to military order and discipline. Subjective judgment as to what comprises the proper image differs in and out of the military. The Air Force has to spell out what is and is not an acceptable image. Neither the Air Force nor the public expect absolute uniformity of appearance. Each member has the right, within established parameters, to express his individuality through his appearance. However, the image of a disciplined serviceman who can be relied upon to do his job when called requires sufficient standardization and uniformity to exclude the extreme, the unusual, and the fad. Additional guidelines are required for the sake of neatness, cleanliness, and safety.

b. All male Air Force personnel at all times while in uniform and while in a duty status when wearing civilian clothing will comply with the following:

\*     \*     \*     \*     \*     \*

(4) Wigs. Wigs or hair pieces will not be worn while on duty or in uniform except for cosmetic reasons to cover natural baldness or physical disfiguration. If under these conditions a wig or hair piece is worn, it will conform to Air Force standards." AFM 35–10 §§ 1–12(a), (b)(4).

In pertinent part, the section that applies to female personnel notes that,

"[H]airpieces worn by Air Force women on duty must conform to the same standards as stipulated herein for natural hair." AFM 35–10 § 1–13(b)(2).

Petitioners are, of course, complaining about the fact that bald and physically disfigured men, as well as all women, in the Air Force are permitted to wear wigs that conform to the pertinent appearance standards, while they are not.

Petitioners have invoked the jurisdiction of the Court pursuant to the following statutes: Title 28 U.S.C. §§ 108,

1361, 1651, 2201, 2202, and Title 5 U.S. C. § 703. After an examination of a number of cases that are similar in nature to the instant case, it is clear that the Court has jurisdiction under Title 28 U.S.C. § 1361; thus an examination of the remaining jurisdictional bases alleged by petitioners will not be necessary. See *Miller v. Ackerman*, 488 F.2d 920 (8th Cir. 1973); *Brown v. Schlesinger*, 365 F.Supp. 1204 (E.D.Va.1973); *Etheridge v. Schlesinger*, 362 F.Supp. 198 (E.D.Va.1973); *Martin v. Schlesinger*, 371 F.Supp. 637 (N.D.Ala.1974); and *Whitis v. United States*, 368 F. Supp. 822 (M.D.Fla.1974).

The procedure involved in granting a motion for summary judgment allows the cause to be removed from the trier of fact and decided by the court as a matter of law if there are no genuine issues of material fact presented by the case. Rule 56 of the Federal Rules of Civil Procedure,

> ". . . permits a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, answers to interrogatories, and admissions on file show that there are no genuine issues of material fact to be tried." 6 *Moore's Federal Practice* ¶ 56.04[1], p. 2058.

The motion for summary judgment may rest entirely on the pleadings, or it may be supported by affidavits. Once the movant has made and supported his motion in this fashion a duty devolves on the opposing party to affirmatively show that there are genuine issues of material fact to be tried in the case. As the Ninth Circuit has noted,

> "[W]hen a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of his pleading. As stated in Rule 56(e), his response by affidavits or otherwise must set forth specific facts showing that there is a genuine issue for trial. If he does not

so respond, summary judgment, if otherwise appropriate, shall be entered against him. (Citations omitted) One against whom a motion for summary judgment is filed is therefore under a duty to show that he can produce evidence at the trial, and is not entitled to a denial of that motion upon the unsubstantiated hope that he can produce such evidence at the trial." *Chapman v. Rudd Paint & Varnish Co.*, 409 F.2d 635, 643 (9th Cir. 1969).

Since the facts in the instant case are undisputed by either party it is clear that the case is ripe for summary judgment.

The instant case appears to be one of first impression in that the petitioners who are challenging the "no wig" rule are active duty personnel. Prior to this case it appears that all such challenges have come from so-called "reserve" personnel. In terms of supervision by the military over their daily activities, the differences between the two classes of military personnel are great. For example, it would appear that the average "reservist" devotes approximately one weekend per month and two weeks during the summer months to fulfilling his military obligation, while, as is obvious, the active duty member devotes 100% of his time. The majority of the "reserve-wig" cases appear to have typically arisen in the following fashion: The reservist wishes to wear his natural hair somewhat longer than permitted by the appearance regulations of the particular branch of the military that he is a member of; however, he is willing to conform (in terms of visual appearance) to the standards set by the regulations by wearing a "short hair" wig. The particular branch of the military refuses to allow the reservist to wear such a wig and counts him absent from any drill or training exercise that he attends without having his natural hair cut to the appropriate length. After a sufficient number of such absences are accumulated the military orders the reservist to

involuntary active duty for a specified period and the reservist files suit to contest the military's refusal to allow him to wear the "short hair" wig. In this context, the courts that have decided such cases are badly split. While a number have held in favor of the reservist, a similar number have reached a contrary decision. For example, for cases holding that reservists have a right to wear "short hair" wigs to conform to such appearance regulations see, *Friedman v. Froehlke*, 470 F.2d 1351 (1st Cir. 1972); *Miller v. Ackerman*, 488 F.2d 920 (8th Cir. 1973); *Hough v. Seaman*, 493 F.2d 298 (4th Cir. 1974); *Harris v. Kaine*, 352 F.Supp. 769 (S.D.N.Y.1972); *Good v. Mauriello*, 358 F.Supp. 1140 (W.D.N.Y.1973); *Etheridge v. Schlesinger*, 362 F.Supp. 198 (E.D.Va.1973); *Brown v. Schlesinger*, 365 F.Supp. 1204 (E.D.Va.1973); and *DeFilippis v. United States*, 370 F.Supp. 82 (N.D.Ill.1974). For a sampling of cases holding that the reservist has no such right see, *Cossey v. Seamans*, 344 F.Supp. 1368 (W.D. Okl.1972); *McWhirter v. Froehlke*, 351 F.Supp. 1098 (D.S.C.1972); *Comunale v. Mier*, 355 F.Supp. 429 (W.D.Pa. 1973); *Talley v. McLucas*, 366 F.Supp. 1241 (N.D.Tex.1973); *Hipple v. Warner*, 368 F.Supp. 301 (N.D.Ga.1973); *Whitis v. United States*, 368 F.Supp. 822 (M.D.Fla.1974); *Martin v. Schlesinger*, 371 F.Supp. 637 (N.D.Ala.1974); and *Hoersch v. Froehlke*, 382 F.Supp. 1235 (E.D.Pa.1974).

Even though the cases in other jurisdictions appear split, the case law in the Ninth Circuit is not. In a recent case involving a challenge to the Marine Corps "no wig" rule, as applied to reservists, on denial of equal protection grounds very similar to those found in the instant case (i. e., the regulations permitted women Marines to wear wigs but did not afford men the same privilege) the court affirmed the granting of defendants' (Marine Corps) motion for summary judgment. See *Campbell v. Beaughler*, 519 F.2d 1307 (9th Cir.

1975). In *Campbell* the defendants supported their motion for summary judgment by detailed affidavits explaining the reasons underlying the "no wig" rule. Although the respondents in the instant case could have made a somewhat stronger factual record to support the reasons underlying the Air Force "no wig" rule as applied to petitioners, the Court feels that, based on the regulation itself and the arguments both for and against the granting of the respondents' motion, the entire record before it is sufficient to warrant the granting of respondents' motion for summary judgment.

In light of the recent decision in *Campbell* the aforementioned result is clearly mandated. As the Ninth Circuit noted:

"This court has held that hair length regulations are a rational exercise of regulatory power. *King v. Saddleback Junior College District*, 445 F.2d 932 (9th Cir. 1971). Moreover, we have held that an individual reservist possesses no constitutional right to choose his own hair style as against military regulations, and that the military has a right to govern its affairs without untoward intervention from the judiciary. *Agrati v. Laird*, 440 F.2d 683 (9th Cir. 1971).

"Despite these authorities, and basing their argument on *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), plaintiffs argue that the Marine Corps hair style regulations, which allow women to wear short-hair wigs in order to comply with these regulations, create an arbitrary and unreasonable classification based on sex and, therefore, are unconstitutional. Plaintiffs urge us to subject the Marine regulations to the strict scrutiny applicable to inherently suspect classifications.

"Plaintiffs' reliance on *Frontiero, supra*, is misplaced. Although a plurality of the Court in that case concluded

that sex is an inherently suspect classification, the majority holding was that an Air Force regulation which distinguished between males and females for purposes of proving dependents' status is not rationally based when enacted solely to facilitate administrative convenience, and is, therefore, unconstitutional. Moreover, recent Supreme Court decisions indicate that only a rational relationship between legitimate governmental interests and the sex classification need be found. *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed. 2d 688 (1975); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975).

"The district judge properly believed that the safety and compatibility of Marine regulars and reservists are legitimate governmental interests and that a prohibition of wigs for men is rationally related to that objective. That this prohibition is rationally based is reinforced by the fact that women Marines do not train for combat, operate heavy equipment, wear gas masks, scale obstacles or operate mine detector units.

"In view of the decision in *Schlesinger, supra,* and prior decisions of this court (sic), we find that no constitutional issue is presented either by the regulations prescribing hair length and style nor the interpretation by the Marine Corps which precludes the use of wigs by ready reservists at active duty training." *Campbell v. Beaughler,* 519 F.2d 1307 (9th Cir. 1975) (emphasis original).

For all of the reasons noted supra, it is hereby ordered that petitioners' motion for summary judgment be denied and respondents' motion for summary judgment be granted. The foregoing order constitutes the Court's findings of fact and conclusions of law.